IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEBASTIAN J. PALLADINO )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HSBC BANK, U.S.A, N.A., et al., )<br>)<br>Defendants. )<br>) | Case No. 15-cv-10610<br><br>Hon. Nancy L. Maldonado |

**DEFENDANTS' JOINT RESPONSE TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Defendants [1] respectfully request that this Court deny Plaintiff Sebastian Palladino's request for leave to amend his complaint a second time. (ECF No. 198). None of the revisions offered in the proposed second amended complaint (the "SAC") cure the myriad defects in Palladino's causes of action identified by the pending motions to dismiss. (ECF Nos. 184, 192, and 193). It appears that Palladino hopes to salvage his First Amended Complaint (ECF. No. 65, "FAC") by changing his prayer for relief from overtly overriding the state court judgment of foreclosure, to seeking $4 million in damages to punish Defendants for obtaining that judgment as if that were the only issue that Defendants raised in regards to Palladino's prior deficient pleading. But the deficiencies infecting the proposed second amended complaint are bone deep and cannot be cured with the cosmetic changes that Palladino seeks.

---

[1] This response is filed jointly by all defendants that have appeared in this case pursuant to the Court's order of October 3, 2022. (*See* ECF No. 210). This motion is collectively brought by (1) HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-D, Mortgage-Backed Certificates, Series 2006-D (incorrectly sued as HSBC Bank, U.S.A, N.A. and Fremont Home Loan Trust 2006-D) (the "Trustee" acting on behalf of the "Trust"), Locke Lord LLP, PHH Mortgage Corp., successor by merger to Ocwen Loan Servicing, LLC, ("Ocwen") Wells Fargo Bank, N.A. ("Wells Fargo"), David Standa, Irina Dashevsky, and Howard R. Handville (collectively, the "Ocwen Defendants"); (2) Defendant Real Industry, Inc. ("Real Industry"); (3) Pierce & Associates, P.C., Amber Cowan, Jill Rein (the "Pierce Defendants"); and (4) Peter Bastianen and Codilis & Associates, P.C. (the "Codilis Parties.")

1

As explained in more detail below, leave to amend should be denied as futile for numerous reasons:

- Palladino does not (and, frankly, cannot) propose a new pleading that would avoid the jurisdictional issues raised by the Defendants in their respective motions to dismiss. As explained in those motions, and as explained below, this Court cannot provide Palladino with the relief he seeks because to do so would run afoul of the *Rooker-Feldman* doctrine since this action is nothing more than a collateral attack on a state court foreclosure judgment. Thus, the Court lacks subject matter jurisdiction over Palladino's claims.

- This Court lacks personal jurisdiction over Real Industry, a Delaware corporation with its principal place of business in Texas that does not conduct business in Illinois and has no relation to the loan at issue in this case.

- Even ignoring the jurisdictional defects, the proposed SAC fails to state a claim against any defendant. Further, it is barred under the doctrine of *res judicata* as to the Ocwen Defendants and the Pierce Defendants.

Thus, rather than entertain further delay, this Court should deny the motion for leave as futile and grant the previously filed motions to dismiss the First Amended Complaint. Seven years of fruitless litigation is enough. Plaintiff should not be allowed to drag this Court or the Defendants toward an eighth.

For all these reasons, the proposed SAC is futile as to as to all Defendants. The Court should dismiss this case with prejudice.

**PROCEDURAL HISTORY**

This case began seven years ago in 2015 when Plaintiff filed his first complaint "seeking damages and costs against the Defendants scheme to defraud and take [his] home by a wrongful foreclosure which violates federal and state laws." (ECF No. 1-1, ¶ 1). This naked attempt to delay his ongoing state-court foreclosure (the "Foreclosure") (which, itself, had been in litigation for seven years) failed.[2] Defendants moved to dismiss the complaint on various grounds, including lack of personal jurisdiction as to Real Industry and failure to state a claim, or in the alternative to stay the case under the *Colorado-River* abstention doctrine pending resolution of the state-court foreclosure. (ECF Nos. 42, 51, and 52).

Plaintiff did not respond to the motions, but instead requested leave to file an amended complaint, which this Court allowed after Plaintiff submitted his proposed amended complaint. (ECF Nos. 60, 65, and 69). The Defendants again moved to dismiss or stay the case on the same grounds. (ECF Nos. 71, 74, and 77). Plaintiff missed two deadlines to respond to those motions, but this Court nonetheless gave Plaintiff an extension of time. (ECF No. 104).[3] In March of 2017, this Court granted the pending motions to dismiss in part, staying the case pursuant to the *Colorado-River* doctrine. (ECF No. 119). According to this Court, "[b]oth lawsuits, at their core, involve [Plaintiff's] [p]roperty, the mortgage and note, and the events surrounding the issuance of

---

[2] This Court may take judicial notice of the Foreclosure complaint (ECF No. 192-1), and the orders entered by the state court in the Foreclosure without converting this motion into a summary judgment motion. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (taking judicial notice of allegations in another lawsuit); *Nettles-Bey v. Cars Collision Cen.*, LLC, 11 C 8022, 2013 WL 317047, *9 n.8 (N.D. Ill. Jan. 25, 2013) ("The court can take judicial notice of the existence of another lawsuit…").

[3] Plaintiff actually filed motions for extension after his time to respond had passed and further misrepresented to this Court that Defendants' counsel had agreed to the relief when they had in fact either objected to it or never been contacted. (ECF Nos. 97, 102). As a result of this behavior, Plaintiff was advised by this Court that further requests for extensions after deadlines had passed would be strongly disfavored. (ECF No. 104).

the mortgage and note," and thus "there [was] a substantial likelihood that the state court [would] dispose of all the claims presented in the federal case." (*Id.* at 9, 11).

Accordingly, "a ruling by the state court judge permitting foreclosure of the [p]roperty [was] substantially likely to dispose of [Plaintiff's] federal claims of fraud and collusion based upon principles of issue preclusion." (*Id.* at 11). With respect to Defendant Real Industry's lack of personal jurisdiction argument, this Court determined "that staying th[e] action pursuant to the *Colorado River* abstention doctrine 'will most likely obviate the need for this court to decide the issues of personal jurisdiction' over Real Industry." (ECF No. 119, at 15 (*quoting M.S. Distributing Co., v. Nat'l Record Mart, Inc.*, No. 00 C 5728, 2000 WL 1720971, at *9 (N.D. Ill. Nov. 16, 2000))).

Ultimately, the plaintiff in the Foreclosure action prevailed. In February 2019, the state court judge entered summary judgment and judgment of foreclosure against Palladino.[4] Palladino then successfully delayed a foreclosure sale for another two and a half years, until October 2021, wherein he himself was the successful bidder, buying his property with a winning cash bid of $291,500.[5] Palladino initially sought further delay by appealing the Foreclosure, but voluntarily dismissed the appeal, putting an end thirteen years of state-court litigation.[6] This Court then allowed Defendants to file renewed motions to dismiss in June. (ECF Nos. 181, 183).

The Defendants did so, this time arguing, among other things, that the complaint was barred by the *Rooker-Feldman* doctrine, that this Court still lacked personal jurisdiction over Real Industry, and that Plaintiff had failed to state a claim. (ECF Nos. 184, 192, and 193). Plaintiff did not respond to the motions by his court-ordered deadline, but instead submitted an improper

---

[4] Judgment of Foreclosure, attached hereto as "Exhibit 1."
[5] Motion for Order Approving Sale, attached hereto as "Exhibit 2"; Order Approving Report of Sale, attached hereto as "Exhibit 3."
[6] Order dismissing appeal, attached hereto as "Exhibit 4."

petition to vacate the state-court orders. (ECF No. 195). Consistent with all of his previous efforts, Plaintiff's petition made clear that his goal was to "[v]oid all judgments" from the state court case. (ECF No. 195, at 7). This Court quickly and correctly denied that petition, and set another deadline for the Plaintiff to respond. (ECF No. 196). However, Plaintiff again refused to respond to the motions, instead choosing to file the instant, single-paragraph motion for leave to file another amended complaint in which the sole substantive change was to revise his prayer for relief from a rescission of his mortgage transaction to a damages award of $4 million. (ECF No. 198).[7] Plaintiff's motion states in conclusory fashion that "no harm will inure to the [d]efendants by the granting of [his] motion," however that is completely untrue. Plaintiff's baseless litigation has and continues to cost the Defendants thousands of dollars in attorneys' fees as they are required to respond to each and every different iteration of the same arguments in his attempt to attack his state-court foreclosure through this Federal Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "shall be freely given when justice so requires." However, leave need not be granted in every case. While amendments may be liberally allowed, they should be denied where the amendment would be futile because it fails to cure a deficiency raised in a defendant's motion to dismiss. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) ("Plaintiffs have also already received an opportunity to remedy these deficiencies when the district court granted leave to amend the original complaint. That plaintiffs subsequently amended but nonetheless proved unable to

---

[7] Although Plaintiff restyles his RICO claim based on alleged scheme to defraud the state court, the revised claim merely removes RICO and labels this cause of action as fraud of the court. This is a distinction without a difference.

5

adequately plead a claim 'indicates the futility of granting further leave to amend.'") (quoting *Int'l Union of Operating Engineers, Local 139, AFL-CIO v. Daley*, 983 F.3d 287, 296 (7th Cir. 2020)).

Thus, where it is clear that a defect cannot be corrected so that amendment is futile, leave to amend can be denied and the court can enter an immediate final judgment. *See, e.g.*, *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 666 (7th Cir. 2007); *James Cape & Sons Co. v. PCC Construction Co.,* 453 F.3d 396, 400–01 (7th Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (Listing reasons for finding that leave should not be granted [to] include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . .").

## ARGUMENT

Leave to amend should be denied as futile because Palladino's proposed SAC pleads himself out of the Court's jurisdiction by attempting, once again, to use this Court to complain about events occurring in the Foreclosure. Palladino's repeated attempt to relitigate the Foreclosure in this Court lacks any legal justification. This Court lacks jurisdiction to hear his claims and it should, therefore, put an end to his harassing and frivolous claims. Second, even if this Court has subject matter jurisdiction, this Court still lacks personal jurisdiction over Real Industry. Real Industry is a Delaware corporation with its principal place of business in Texas. It does not conduct business in Illinois and has no relation to the loan at issue in this case. Finally, even ignoring the jurisdictional issues—which this Court cannot do—Palladino fails to state a claim in the proposed

SAC in any event. For these reasons, as discussed in more detail below, Plaintiff's Motion for Leave to Amend should be denied.

I.  **The proposed SAC doesn't cure the jurisdictional defects previously identified by Defendants in their prior motions to dismiss.**

As noted above, the Defendants have previously moved to dismiss the FAC for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Through the proposed SAC, Palladino appears to be attempting to avoid this dispositive issue. But his proposed amendments still seek a judgment against Defendants based on holdings in the now-completed Foreclosure.

   A.  **The proposed SAC improperly seeks a judgment based on events that occurred in the Foreclosure and is, therefore, barred under *Rooker-Feldman*.**

No matter how Plaintiff tries to recast his prayer for relief, this case remains entirely about challenging the state-court foreclosure action. Plaintiff may purport to seek only damages, but those damages sought are a direct consequence of the alleged conduct and completion of a state foreclosure case, and the judgment of foreclosure against him. This thinly veiled effort remains barred by the *Rooker-Feldman* doctrine.

*Rooker-Feldman* removes subject-matter jurisdiction from federal district courts where a Plaintiff seeks review of a state-court judgment. *Rooker v. Fid. Trust Co.*, 263 U.S. at 415-16 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. at 482-86 (1983); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *see also Carpenter v. PNC Bank Nat'l Ass'n*, 633 Fed. App'x 346, 347-48 (7th Cir. 2016) (affirming dismissal of complaint and noting that *Rooker-Feldman* deprives federal district courts of subject-matter jurisdiction over complaints based on state-court foreclosure judgments). There are two branches of the *Rooker-Feldman* doctrine. The first branch holds that "[c]laims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry." *Taylor v. Fed. Nat'l Mortg. Assoc.*, 374 F.3d 529, 532 (7th

Cir. 2004) (explaining that "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment"). The second branch precludes "claims that are 'inextricably intertwined' with a state-court judgment, 'such that success in federal court would require overturning the state court decision.'" *Cosey v. Ameriquest Mortg.*, 2011 WL 5828191, *2 (N.D. Ill. Nov. 18, 2011) (quoting *Epps. v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003). A matter is "inextricably intertwined" with a state court judgment when the "District Court is in essence being called upon to review the state court decision." *Feldman*, 460 U.S. at 482-83, n. 16; *see also Taylor*, 374 F.3d at 533 (stating that a claim is "inextricably intertwined" if the claim "indirectly seeks to set aside a state court judgment").

In Plaintiff's own words, this case is "about a state legal system, that has allowed criminal activity to go unpunished to the detriment of its citizens. But most of all, this case is about the multiple felony crimes that have been committed against [him] in State foreclosure Court…" (ECF No. 198-1, at 8-9). Thus, Palladino challenges the foreclosure plaintiff's interest in the underlying mortgage (the "Mortgage"). (ECF No. 198-1, ¶ 76.) But the state court already found after eleven years of litigation that the foreclosure plaintiff had an interest in the Mortgage sufficient to allow the Foreclosure to proceed. (ECF No. 192-2 (Judgment of Foreclosure)). Any contrary order would, in effect, result in this Court holding that the state court trial judge had erred. Palladino also argues that he rescinded the Loan pursuant to the Truth in Lending Act. (ECF No. 198-1, ¶ 78). But a finding that Palladino properly rescinded the Loan would also require that this Court

find that the state court in the Foreclosure erred in entering a judgment of foreclosure and sale, which found the allegations of the foreclosure complaint (Ex. 1) proven.

While some of Plaintiff's claims simply seek damages as a result of the foreclosure, an improper effort in its own right, others directly challenge the state-court proceedings. *See, e.g.*, Count V (alleging "numerous uncontradicted statements of fact that were untrue misrepresentations by HSBC, and all Defendants to the [State] Court."); Count VI ("Defendants entered into an agreement to effectuate the scheme to defraud [Plaintiff] out his property by creating fraudulent indorsements and 2 fabricated mortgage assignments"); Count VII ("Defendants violated 815 ILCS 505/2 by engaging in unfair acts and practices to collect a superseded debt.").[8] All of Palladino's proposed claims are improper, as they amount to nothing more than an indirect appeal of the state-court judgment such that this Court cannot rule in Palladino's favor without finding that the state court acted improperly.

Plaintiff's claims seeking damages over the validity of his state-court foreclosure constitute improper indirect challenges to the judgment entered by the DuPage County court in a case that involved substantially the same issues (*i.e.*, enforcement of the mortgage and validity of the foreclosure) as those presented here. By entering the judgment of foreclosure and confirming the sale, the state court already determined that the foreclosure against Plaintiff was proper. A finding that Defendants acted improperly in seeking that foreclosure or lacked a legal basis to obtain it would eviscerate that judgment of foreclosure. This Court thus lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine and amendment of Plaintiff's Complaint is futile. *See Sheikhani v. Wells Fargo Bank*, 577 Fed. App'x 610, 611 (7th Cir. 2014) (affirming district court's

---

[8] Although Real Industry is not named in Count III, it similarly attacks the state-court foreclosure by alleging that various attorneys in that proceeding "committed numerous acts of violation of Candor Towards the Tribunal, in violation of the Rules of Professional Conduct." (ECF No. 198-1, at 38-39).

denial of leave to amend as futile where claims against state-court foreclosure action remained barred by *Rooker-Feldman*).

### B. This Court still lacks personal jurisdiction over Defendant Real Industry.

Despite being repeatedly informed that Real Industry has no contacts with Illinois and did not acquire any assets or liabilities from Fremont Investment and Loan, Plaintiff continues to improperly list Real Industry as a defendant in this matter. (ECF No. 185, Ex. I). As a result, an amendment as to Real Industry is futile and Plaintiff's Motion for Leave to Amend should be denied.

The only connection Real Industry has to this case is that it is the corporate parent of SGGH, LLC, an entirely separate legal entity. (ECF No. 185, Ex. A, ¶ 5). Real Industry did not originate, assign, or foreclose on the subject loan. And Real Industry does not do business in Illinois and is not otherwise systematically present here. (*Id.* ¶ 11). As a result, the Court has neither general nor specific jurisdiction over Real Industry. "In a federal question case such as this one, a federal court has personal jurisdiction over the defendant if either federal law [upon which the plaintiff is suing] or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–05 (1987)); see also Fed. R. Civ. P. 4(k)(1). Where a district court lacks either general or specific jurisdiction over a party, it must dismiss that party. *See, e.g., Mi-Jack Sys. & Tech., LLC v. Babaco Alarm Sys., Inc.*, No. 12-cv-05448, 2013 WL 6131476, at *3

(N.D. Ill. Nov. 20, 2013); *Advanced Aerofoil Techs., Inc. v. Todaro*, No. 11-CV-7866, 2011 WL 6009616, at *3-8 (N.D. Ill. Nov. 30, 2011).

There is no question that this Court lacks general jurisdiction over Real Industry. "In order to expose itself to the general jurisdiction of the courts of Illinois, a defendant's business contacts in Illinois must be intentional, continuous, and substantial rather than inadvertent, trivial, or sporadic, [and must] continue up to the time of suit . . . ." *Richter v. INSTAR Enterprises Int'l, Inc.*, 594 F. Supp. 2d 1000, 1006 (N.D. Ill. 2009) (citations omitted). General jurisdiction is a "demanding standard" applying only when a company's "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (emphasis in original). Real Industry is a Delaware corporation with its principal place of business in Texas. (ECF No. 185, Ex. A, ¶ 3). It does not conduct business in Illinois, is not registered or licensed to do business in Illinois and does not have a registered agent for service of process in Illinois. (*Id.* ¶ 11). It does not maintain offices in Illinois. (*Id.*). It does not advertise in Illinois, nor has it paid taxes in Illinois. (*Id.*). While Real Industry has previously entered into transactions unrelated to the loan at issue with an insurance broker with operations in Illinois, it has not otherwise conducted any activities in the state. (ECF No. 185, Ex. A, ¶ 11). Real Industry is thus not subject to general jurisdiction in Illinois.

This Court also lacks specific jurisdiction over Real Industry. Other than its ownership of its SGGH subsidiary, Real Industry has no relation to the loan at issue. In order for the Court to have specific personal jurisdiction, "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3)

11

the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Centurion Serv. Grp., LLC v. SBMC Healthcare, LLC*, 944 F. Supp. 2d 617, 621 (N.D. Ill. 2013) (quoting *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)). Real Industry is not— nor has it ever been—a mortgage servicer or originator, and it has had absolutely no involvement with the subject loan, the assignments, or the foreclosure proceedings against Plaintiff. ECF No. 185, Ex. A, ¶¶ 4, 9-10). Based on these facts alone, Real Industry is not amenable to specific personal jurisdiction in Illinois. Plaintiff alleges that Real Industry was formerly known as "Signature Group Holdings, Inc." and therefore Plaintiff erroneously assumes that Real Industry must have inherited all rights and liabilities of the Signature Group Holdings, Inc. entity that acquired Fremont Reorganizing Corporation and Fremont General Corporation. (ECF No. 198-1, ¶¶ 6-7). However, Plaintiff offers no support for this assertion, and furthermore Signature Group Holdings, Inc.'s contacts with Illinois cannot be imputed to Real Industry. *See Stenholt v. Centex Real Estate Corp.*, No. 95 C 2664, 1995 WL 535118, at *2 (N.D. Ill. Sept. 1, 1995) ("Separate corporate existence is presumed as to the parent-subsidiary relationship . . . .").

Real Industry has absolutely no relationship with the Plaintiff, the mortgage loan, the property at issue in this case, the state court foreclosure proceedings, or the jurisdiction of Illinois as a whole. Real Industry's sole alleged connection to Illinois and the disputed loan is that it is the parent company of a subsidiary which is claimed to be responsible (as the purported legal successor to another entity) for the alleged loan-related misconduct. This alone is insufficient to establish this Court's personal jurisdiction over Real Industry, and thus Plaintiff's proposed Second Am. Complaint is futile as to Real Industry.

**II.     The proposed SAC fails to state a claim for relief in any event.**

Even ignoring the jurisdictional issues—which this Court cannot do—leave to amend should still be denied because the proposed SAC fails to state a claim for which relief can be granted. Notwithstanding the nearly fifty pages of allegations, Palladino's rambling proposed pleading is incoherent and fails to address which defendants did what, and why certain defendants should be liable. Rule 8 requires more. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*.

Here, the proposed SAC falls flat. The proposed counts fail in numerous ways. For example, Count I alleges that "all defendants" violated the FDCPA. But how? Palladino never pleads facts sufficient to show that "all defendants" (1) are debt collectors such that their statements are subject to the FDCPA, or (2) that they communicated in a manner to Palladino in the past 12 months (the limitations period for such a claim) in connection with the collection of a debt that they could be liable in any event. For example, Plaintiff names several individual attorneys as defendants in the proposed SAC; but even assuming the employer law firms are debt collectors under the FDCPA, those employee-attorneys or shareholders are not. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).[9] Notably, Palladino's prior complaint never raised the FDCPA as a claim—thus this brand new claim does not relate back to the original 2015 filing for limitations purposes. (*See* ECF No. 65.) And that's just the first

---

[9] Boilerplace allegations of personal liability against employees of debt collectors are frivolous, constitute malicious prosecution, and such action is sanctionable under Rule 11. *Pettit*, 211 F. 3d at 1059; *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000).

13

proposed count. A rudimentary review of the remaining counts show that they fare no better. For example, Count II, for fraudulent concealment, is a single paragraph in length (other than incorporating all prior paragraphs) and simply repeats the elements of fraudulent concealment. But there is no effort by Palladino to describe the actual actions of *any* of the defendants, notwithstanding the need to do so under Rule 9. *See* Fed. R. Civ. P. 9(b). The same problem infects the other fraud counts as well (counts V-VIII). Count III appears to be attempting to enforce the Illinois Rules of Professional Conduct, which isn't a cause of action. And Count IV alleges that "all defendants" somehow violated TILA by not honoring a purported rescission—a clearly untimely rescission as explained in the Ocwen Defendants' Renewed Motion to Dismiss (ECF No. 192)—but Palladino never explains how each of the many defendants he has frivolously named in the proposed SAC could have violated that statute. Finally, the last count—IIED—fails because it lacks facts showing that any defendant's conduct was "so extreme as to go beyond all bounds of decency, and to be regarded as intolerable in a civilized community." *Portman v. Robel*, 11-CV-4577, 2012 WL 2565857, *5 (N.D. Ill. June 28, 2012).

All of the counts in the proposed SAC contain fatal flaws. Given the clear lack of facial merit to the proposed claims, this Court should not allow Palladino leave to file this document in this 7-year old case to amend the result of a 14-year old case. His request for leave to amend should be denied, and this Court should further grant the Defendants' Renewed Motions to Dismiss (ECF Nos. 184, 192, and 193) and put an end to this litigation.

**III.     Any issues arising out of the Bankruptcy or the Foreclosure should be handled in the Bankruptcy or the Foreclosure.**

Further, even without the jurisdictional bar of *Rooker*, the proposed SAC runs headlong into another bar under the doctrine of *res judicata*.

*Res judicata*, or claim preclusion, "provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (*res judicata* "precludes the parties or their privies from relitigating issues that were ***or could have been*** raised in [a prior] action.") (citations omitted) (emphasis added). Federal courts must give state-court judgments the same preclusive effect they would have in state court. *See Licari v. City of Chi.*, 298 F. 3d 664, 666-67 (7th Cir. 2002). "*Res judicata* applies where: (1) a final judgment was rendered by a court of competent jurisdiction; (2) there is an identity of parties or their privies; and (3) there is an identity of causes of action." *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 944 (N.D. Ill. 2005) (applying Illinois law).

Palladino's claims here all arise from other cases—cases in which final judgments on the merits have been entered, such as the Foreclosure (Ex. 3) and Palladino's adversary bankruptcy action. (*See Palladino v. HSBC Bank, U.S.A., N.A. as trustee for Fremont Home Loan Trust 2006 D Mortgage-Backed Certificates, Series 2006-D, et al.*, 19 A 00131 (N.D. Ill. Bankr.) (dismissal order, attached hereto as "Exhibit 5"). As already explained in the Ocwen Defendants' Renewed Motion to Dismiss (ECF No. 192), Palladino's claims against the Ocwen Defendants are barred by the final judgment in the Foreclosure. There is a final judgment on the merits in favor of the Trustee, and the Ocwen Defendants and Pierce Defendants are either parties or the privies of parties—thus, there exists an identity of parties. And all these claims clearly stem from the dispute

15

over the validity of the mortgage loan, something that Palladino has unsuccessfully raised to every judge he can get in front of. Any claim brought, or which could have been brought, in the Foreclosure is now barred by *res judicata*. And on July 8, 2022, the bankruptcy court dismissed Palladino's adversary complaint with prejudice as well—a complaint in which the Trustee and the Codilis Parties were defendants—so attempting to raise claims that could or should have been raised in that forum is improper as well. (Ex. 1.) The adversary proceeding was dismissed on Plaintiff's own motion, and the voluntary with-prejudice dismissal of that action constitutes a final judgment on the merits. *See Golden v. Barenbord*, 1992 U.S. Dist LEXIS 10125, 1992 WL 162977, \*14-\*20 (N.D. Ill Jul. 7, 1992).

Thus, Palladino's proposed claims against the Codilis Parties, Ocwen, and Pierce Defendants are barred by *res judicata*. All the bold, underlining, and italicizing in the world can't get around the fact that these are claims that could and should have been raised in either the Foreclosure or the adversary bankruptcy action. As his proposed claims should and could have been litigated in these other courts, they are necessarily barred (at least as to those defendants) under the doctrine of *res judicata*.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court enter an order denying Plaintiff's motion for leave, dismissing this case with prejudice, and for all other relief that is appropriate and just.

Dated: October 17, 2022

By: /s/ Ryan A. Sawyer
Simon Fleischmann (6274929)
*sfleischmann@lockelord.com*
Ryan A. Sawyer (6293696)
*ryan.sawyer@lockelord.com*
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-1751 (RAS)

*Counsel for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-D, Mortgage-Backed Certificates, Series 2006-D (incorrectly sued as HSBC Bank, U.S.A, N.A. and Fremont Home Loan Trust 2006-D), Locke Lord LLP, Ocwen Loan Servicing, LLC, Wells Fargo Bank, N.A., David Standa, Irina Dashevsky, and Howard R. Handville*

By: /s/ Louis J. Manetti, Jr.
David M. Schultz
Jennifer W. Weller
Justin Penn
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 North Franklin St, Suite 2500
Chicago, IL 60606
Telephone: 312.704.3000
Facsmile: 312.704.3001
dschultz@hinshawlaw.com
jweller@hinshawlaw.com
jpenn@hinshawlaw.com
lmanetti@hinshawlaw.com

*Counsel for Pierce and Associates, P.C., Jill Rein and Amber Cowan*

By: /s/ Justin Seccombe
Justin Seccombe (6303946)
Fredrick S. Levin (6202631)
Edward Somers (6300920)
Buckley LLP
353 N. Clark Street, Suite 3600
Chicago, IL 60654
Telephone: 312.924.9853
jseccombe@buckleyfirm.com
flevin@buckleyfirm.com
esomers@buckleyfirm.com

*Counsel for Defendant Real Industry, Inc*

By: /s/ Adam A. Price
Codilis & Associates, P.C.
15w030 N. Frontage Rd. Suite 100
Burr Ridge, IL 60527
Telephone: 630-794-5300
adam.price@il.cslegal.com

*Counsel for Intervenors Peter Bastianen & Codilis & Associates, P.C.*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2022, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system and that all counsel of record will be served via the Notice of Electronic Filing generated by CM/ECF.

/s/ *Justin Seccombe*
Justin Seccombe