IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Sebastian J. Palladino,<br><br>        Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A. et al.,<br><br>        Defendants. | No. 15 CV 10610<br><br>Honorable Nancy L. Maldonado |

**Memorandum Opinion and Order**

Pro se Plaintiff Sebastian J. Palladino filed this suit in 2015, bringing claims against more than a dozen defendants based on an alleged scheme to defraud Palladino and take his home by wrongful foreclosure. After several rounds of motion practice, the case was stayed for five years while Palladino fought the foreclosure in state court. The Court lifted the stay in June 2022, and the case resumed. Pending before the Court now is a motion by Palladino for leave to file a Second Amended Complaint. (Dkt. 198.) Defendants[1] have filed a single joint opposition to the motion. (Dkts. 210, 212.) For the reasons stated in this Memorandum Opinion and Order, Palladino's motion for leave to amend is denied, as the Court finds the Second Amended Complaint would be futile based on a lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, based on a lack of personal jurisdiction over Defendant Real Industry, and for failure to state a claim.

---

[1] Unless otherwise noted, the Court uses "Defendants" to refer collectively to the 13 named Defendants and the two intervenor parties. The named Defendants include the following parties, who are organized into three groups for the purposes of this Order: (1) The "Ocwen Defendants," which include HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2006-D, Mortgage-Backed Certificates, Series 2006-D (sued as HSBC Bank, U.S.A, N.A. and Fremont Home Loan Trust 2006-D), Locke Lord LLP, PHH Mortgage Corp., Wells Fargo Bank, N.A. ("Wells Fargo"), David Standa, Irina Dashevsky, and Howard R. Handville; (2) Real Industry, Inc. ("Real Industry"); and (3) the "Pierce Defendants," which include Pierce & Associates, P.C., Amber Cowan, and Jill Rein. The intervenor parties include Peter Bastianen and Codilis & Associates, P.C, whom the Court refers to collectively as the "Codilis Parties."

Although the Court previously indicated it would have Defendants renew their prior motions to dismiss the First Amended Complaint, the Court finds that the same reasoning outlined in this opinion that supports denial of the motion for leave to amend also requires dismissal of that prior complaint as well. The First Amended Complaint, while it includes some different purported legal claims, rests on the same factual basis that Defendants engaged in fraud in the underlying state court proceedings. It would be a waste of the parties' and the Court's resources to go through renewed briefing on a complaint that is substantively the same as the instant proposed Second Amended Complaint, which the Court has found is futile. Dismissal of the entire case on *Rooker-Feldman* grounds is therefore warranted.

## Background

The background of Palladino's instant federal action and underlying state court foreclosure action is set forth more fully in the Court's prior order on Defendants' motions to dismiss the First Amended Complaint. (Dkt. 119.) The Court will briefly summarize that background here and the subsequent developments since the time the Court issued its prior order.

**A. Procedural history of state foreclosure action and the instant case**

The instant suit arises from a home loan issued in 2006 to Palladino's wife at the time, Marcella Palladino, and a subsequent foreclosure action. In the spring of 2006, Mr. and Ms. Palladino (who is not a party to this lawsuit) applied to Fremont Investment and Loan ("FIL") for a loan to refinance their existing mortgage on a property located in Naperville, Illinois (the "Property"). (Dkt. 119 at 2.) Ms. Palladino subsequently signed a 30-year promissory note for $313,500, secured by a mortgage on the Property. (*Id.*)

The Palladinos ultimately defaulted on their mortgage payments and, in May 2008, FIL initiated a foreclosure action in DuPage County Circuit Court, Case No. 2008 CH 001730. (*Id.*)

On June 18, 2008, FIL's parent company, Fremont General Corporation, filed for bankruptcy. (*Id.* ¶ 58.) On July 11, 2008, FIL voluntarily withdrew its foreclosure complaint. (*Id.* ¶ 59). On November 17, 2008, HSBC Bank, N.A., as Trustee under a Pooling and Servicing Agreement for the Fremont Home Loan Trust 2006-D ("HSBC"), filed a foreclosure action against the Palladinos in DuPage County, Case No. 2008 CH 4548, using Pierce and Associates, P.C. as its counsel. (*Id.* ¶ 60.)

The state trial court initially awarded summary judgment to HSBC, but that decision was reversed on appeal in 2011 based on Palladino's challenge to HSBC's standing. The state appellate court found that there were genuine disputes of fact as to whether there had been an assignment of the mortgage and note from FIL to HSBC. *HSBC Bank USA, Nat'l Ass'n v. Palladino*, No. 2-10-0742, 2011 WL 10406159, at *1 (Ill. App. Ct. Apr. 29, 2011).[2] The appellate court identified several other issues precluding summary judgment, including that the evidence of indebtedness had not been established as a matter of law, and that it was unclear whether HSBC in fact possessed the relevant promissory note. The case was then remanded to the state trial court for further proceedings. After the remand, the Palladinos filed for divorce in 2012 and Mr. Palladino was granted sole possession of the Property. The state foreclosure proceedings continued over the course of the next several years after the remand from the appellate court.

In November 2015, while the state foreclosure proceedings were still ongoing, Palladino initiated the instant federal lawsuit. Palladino's Complaint named as Defendants a number of financial institutions, loan servicing companies, and law firms involved in his state court

---

[2] The Court takes judicial notice of this lawsuit as it is a matter of public record, referred to in the instant lawsuit, and central to the issues being decided in this case. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

foreclosure proceedings. (*See* Dkt. 1.) The Complaint indicated that Palladino was seeking "damages and costs against the Defendants [sic] scheme to defraud and take [his] home by a wrongful foreclosure which violates federal and state laws." (Dkt. 1 ¶ 1.) After an initial round of motions to dismiss, Palladino filed a First Amended Complaint (FAC). (Dkt. 65.) Defendants (not including the intervenors, who were not named in the FAC) then filed a second round of motions to dismiss the FAC, or alternatively to stay the case pursuant to the *Colorado-River* doctrine pending resolution of the state court foreclosure action.

On March 24, 2017, the Court granted the motions to dismiss in part, staying this federal case pursuant to the *Colorado-River* doctrine. (Dkt. 119.) As the Court noted in its decision, "[b]oth lawsuits, at their core, involve [Plaintiff's] Property, the mortgage and note, and the events surrounding the issuance of the mortgage and note," and thus "there [was] a substantial likelihood that the state court [would] dispose of all the claims presented in the federal case." (*Id.* at 9, 11.) The Court declined to reach the merits of the motions to dismiss in light of the stay.

Eventually, in February 2019, the state court entered summary judgment and judgment of foreclosure against Palladino. The final foreclosure sale of the property was delayed for over two years until October 2021, when Palladino successfully bid on his own property. Palladino then initially sought further appellate review of the foreclosure, but ultimately voluntarily dismissed his appeal in April 2022.

After the dismissal of Palladino's appeal, the Court lifted the stay and allowed Defendants to file renewed motions to dismiss the First Amended Complaint, which they submitted in July 2022. (Dkts. 184, 187, 194.) Palladino, now proceeding pro se, failed to respond to the motions, and instead filed a "petition to vacate the state-court orders," which the Court denied. (Dkt. 197.) The Court set another deadline for Palladino to respond to the motions to dismiss, but instead of

responding, Palladino filed a one-paragraph motion for leave to file a Second Amended Complaint (SAC). The SAC re-pled Palladino's claims, and also sought to add the Codilis Parties as Defendants. (Dkt. 198-1.)

Given the multiple motions to dismiss and motion for leave to amend, the Court decided to streamline the issues by first having the Defendants (including the Codilis Parties as intervenors) file a single joint opposition to the motion to amend, to first resolve the issue of whether to allow the SAC at all. The Court therefore denied the Defendants' motions to dismiss the FAC without prejudice, with leave to reinstate after the Court resolved the motion to amend. (Dkt. 210.) Palladino's motion for leave to amend is now fully briefed.

### B. Summary of Palladino's proposed SAC

Palladino's sprawling nine-count proposed SAC spans 35 pages, with 94 paragraphs of compound allegations and an additional 250 pages of exhibits. (Dkt. 198-1.) Palladino alleges a wide-ranging conspiracy amongst the Defendants—which include financial institutions, loan servicers, and their law firms—to falsify loan documents and fraudulently seek foreclosure of Palladino's home.

The gravamen of Palladino's claims is that no party in the underlying state foreclosure proceeding had a valid legal interest in the refinancing loan that Ms. Palladino sought with FIL, and therefore no party had proper standing to seek foreclosure on the Property when the Palladinos failed to keep up with payments. (*See, e.g.*, *id.* ¶¶ 30–31.) Palladino claims that FIL falsified loan documents and lied to the Palladinos about the origin of their promissory note and the identity of the institution that was actually responsible for the loan, and further contends that after FIL's parent company declared bankruptcy, HSBC did not have proper standing to assume the note and seek foreclosure. (*Id.* ¶¶ 31–41.) Palladino goes on to assert that the Defendants acted in concert to

5

commit fraud upon the state court during the foreclosure proceedings by submitting false documents in order to substantiate HSBC's supposed claim in the mortgage. (*Id.*) Palladino separately alleges that he properly rescinded his loan under the Truth in Lending Act, and therefore it was unlawful for Defendants to seek foreclosure at all. (*Id.* ¶ 49.) Apart from the state foreclosure proceeding, Palladino also alleges that he was involved in Chapter 13 bankruptcy proceedings in this District Court during the same period, and that a number of the Defendants, specifically the Ocwen Defendants (including HSBC) and the intervenor Codilis Parties (their attorneys in the bankruptcy proceedings), submitted false documents to the bankruptcy court and concealed relevant information. (*See id.* ¶¶ 57–62.) Palladino suggests that the Defendants' actions prevented him from acquiring bankruptcy protections, including protections from the ongoing state foreclosure action. (*See id.* ¶ 62.)

Based on the allegedly fraudulent actions of Defendants in connection with the state foreclosure and federal bankruptcy proceedings, Palladino asserts a number of causes of action for violations of federal and state law, including claims under the Fair Debt Collection Practices Act (FDCPA), Truth in Lending Act (TILA), and Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). (*Id.* at 36–46.) Palladino also purports to bring claims for fraudulent concealment, civil conspiracy, "bankruptcy fraud," "fraud on the court," intentional infliction of emotional distress, and a claim against the law firm and attorney defendants for violating the Illinois Rules of Professional Conduct. (*Id.*) Palladino seeks compensatory, statutory, and punitive damages, and restitution of his court expenses and attorneys' fees.

## Legal Standards

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "The terms of the rule, however, do not mandate

6

that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). Instead, the District Court retains discretion to deny leave to amend if it finds there has been undue delay, bad faith, or dilatory motive, or when allowing the amendment would result in futility or undue prejudice to the opposing party. *Id*. A proposed amended complaint is futile if it "fails to state a valid theory of liability, or could not withstand a motion to dismiss." *Vasquez v. Ind. Univ. Health, Inc.*, No. 21-cv-01693-JMS-MG, 2023 WL 8372042, at *2 (S.D. Ind. Nov. 22, 2023) (citations omitted); *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 607 (7th Cir. 2013) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim") (citation omitted). A proposed amendment is also by definition futile if it fails to adequately allege federal subject matter jurisdiction. *See, e.g.*, *Murray v. Nationwide Better Health*, No. 10–CV–3262, 2012 WL 112577, at *4 (C.D. Ill. Jan. 12, 2012) (finding proposed amended complaint was futile when court lacked subject matter jurisdiction).

## Discussion

In their joint opposition to Palladino's motion for leave to amend, Defendants argue that Palladino's proposed SAC is futile and therefore should not be permitted. Defendants maintain the SAC is futile for four main reasons: (1) the Court lacks subject matter jurisdiction over all of Palladino's claims under the *Rooker-Feldman* doctrine, because Palladino's lawsuit amounts to nothing more than a collateral attack on the state court foreclosure judgment; (2) the Court lacks personal jurisdiction over Defendant Real Industry in particular, because it has no connection to Illinois or the underlying loan at issue; (3) the claims against the Ocwen Defendants and the Pierce Defendants are barred under the doctrine of res judicata; and (4) the Complaint otherwise fails to state any claim for relief.

For the reasons stated below, the Court agrees that Palladino's SAC amounts to an improper attempt to collaterally attack the state court foreclosure judgment, and is therefore barred under the *Rooker-Feldman* doctrine. The Court also agrees that it lacks personal jurisdiction over Defendant Real Industry. Finally, the SAC is additionally futile because many of its claims are not cognizable causes of action or improperly seek to collaterally attack Palladino's bankruptcy proceedings.

### A. The *Rooker-Feldman* doctrine bars Palladino's claims in the SAC.

The *Rooker-Feldman* doctrine, named for a pair of U.S. Supreme Court cases, provides a jurisdictional bar that prevents lower federal courts from reviewing judgments entered by state courts. *See Andrade v. City of Hammond, Indiana*, 9 F.4th 947, 948 (7th Cir. 2021) ("Appellate review of state-court judgments is reserved exclusively to the United States Supreme Court."); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that *Rooker-Feldman* applies to bar cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *see also Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) ("The *Rooker-Feldman* doctrine is an important foundation for the division of power between federal and state courts."). The doctrine applies to federal claims that "directly challenge a state court judgment or are inextricably intertwined with one." *Hadzi-Tanovic*, 62 F.4th at 399 (internal quotation marks omitted). In order to determine whether a plaintiff's claims are inextricably intertwined with a state court judgment, the court looks to whether the plaintiff's alleged injuries were "caused by the state court judgment" or were truly "independent" of the judgment. *See id.* (citation omitted). If the court determines that the plaintiff is directly challenging a state court judgment, or his claims are inextricably intertwined with a state

8

court judgment, the *Rooker-Feldman* doctrine applies to remove the district court's subject matter jurisdiction, unless the plaintiff shows that they did not have "a reasonable opportunity to raise the [federal] issue in state court proceedings." *Id.* (citing *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017)).

Although Palladino casts his claims in his SAC in terms of a vast conspiracy of fraud and alleged violations of various federal and state statutes, it is evident that all of his allegations trace back to a challenge to the state court foreclosure judgment. Indeed, Palladino makes clear in his SAC that he is bringing his claims based on alleged "felony crimes that have been committed against [him] in State foreclosure Court." (Dkt. 198-1 ¶ 30.) Specifically, as discussed above, Palladino repeatedly claims that various Defendants submitted falsified documents and made fraudulent misrepresentations to the state court in an attempt to secure foreclosure on his property after the Illinois Appellate Court initially reversed a grant of summary judgment in HSBC's favor. (*See id.* ¶¶ 30, 48, 61.) But regardless of the truth of these allegations, the fact remains that the state court ultimately found that HSBC had a legitimate interest in the mortgage sufficient for the foreclosure to proceed, and entered a final judgment of foreclosure on February 8, 2019. (Dkt. 212-1.) Under *Rooker-Feldman*, this Court cannot overturn that state foreclosure judgment, and Palladino's only means of challenging the foreclosure was through appeal to the Illinois Appellate Court, Illinois Supreme Court, and finally the U.S. Supreme Court, a process he initially pursued but ultimately abandoned.

It is true that Palladino does not directly request that the Court reverse the foreclosure judgment, though many of his allegations do take issue with rulings by the state court. But regardless of whether his claims seek direct reversal of the judgment, as noted above, *Rooker-Feldman* also bars federal claims that are inextricably intertwined with a state court judgment, that

9

is, claims based on injures that were caused by the state court judgment. And here, all of Palladino's alleged injuries and claims for damages are inextricably tied to the ultimate judgment of foreclosure, because according to Palladino, that foreclosure was only reached as a result of the fraud, misrepresentations, and otherwise wrongful conduct allegedly perpetrated by Defendants. Put another way, in order for Palladino to be successful on his claims in this lawsuit, the Court would have to agree that the various Defendants involved in the state court proceedings had no standing or legal interest to seek foreclosure, because they committed fraud or submitted false documents to the state court, or because Palladino properly rescinded his loan under the TILA. But such a finding that Defendants committed fraud and never had a right to collect on the loan, or that Palladino properly rescinded the loan, would directly call into question the state court judgment, because it would require this Federal Court to conclude that the state court committed an error in ruling that the loan was valid, the foreclosure plaintiffs had standing, and that foreclosure was warranted.[3] This the Court cannot do, because an indirect attack on a state court judgment is forbidden under *Rooker-Feldman*, even if Palladino does not directly seek reversal of the foreclosure itself. *See Hadzi-Tanovic*, 62 F.4th at 401 (citing *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) (holding that *Rooker-Feldman* barred jurisdiction where a finding for plaintiffs would necessarily "call into question the state court's judgment")). Further,

---

[3] This is the case not only for Palladino's general claims of fraud or conspiracy in the state court, but his statutory claims as well. For example, Palladino claims that Defendants violated the FDCPA by, among other things, attempting to collect on a debt (the home loan) for which they did not have a legal interest. (Dkt. 198-1 at 36.) But the state court judgment of foreclosure establishes that the loan was valid and the parties in the foreclosure action had a legal right to collect on it via foreclosure, and therefore a successful FDCPA claim in this Court would necessarily require rejection of the state court judgment. The same is true for Palladino's ICFA claim: Palladino contends that multiple Defendants engaged in unfair and deceptive practices in violation of ICFA by attempting to collect a "superseded" debt through fraudulent means. (*Id.* at 42–43.) A successful verdict on this claim would again necessarily require the Court to reject the state court judgment. And of course, in order for Palladino to prove that Defendants violated the TILA by not recognizing his valid rescission of the home loan, the Court would have to agree that Palladino did in fact rescind his loan, which would again indirectly invalidate the state court judgment that the loan was valid.

*Rooker-Feldman* applies even if Palladino is correct that the state court decision was a result of fraud. *See Hermann v. Dunn Cnty.*, 761 F. App'x 647, 650 (7th Cir. 2019) ("Even if, as the [plaintiffs] allege, the state judgment that harmed them arose from fraud, *Rooker-Feldman* bars federal district-court jurisdiction over any claim about a state judgment that allegedly caused injuries.").

Applying *Rooker-Feldman*, courts within this District routinely dismiss similar challenges brought by plaintiffs challenging the results of state court foreclosure actions. *See generally Banister v. S. Holland Police Dep't*, No. 16 C 10445, 2017 WL 2813660, at *4 (N.D. Ill. June 29, 2017) (noting that "*Rooker-Feldman* has been frequently applied to claims stemming from a state's foreclosure judgment") (collecting cases). This includes cases, like the instant matter, where the plaintiff attempts to plead around *Rooker-Feldman* by framing his claim not as a direct appeal of a foreclosure judgment, but rather as an action for damages based on the conduct of parties in connection with the foreclosure proceeding. *See, e.g.*, *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204–05 (7th Cir. 2011) ("[Plaintiff] cannot circumvent the *Rooker–Feldman* doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations."); *Faulkner v. Loftus*, No. 16 CV 02432, 2018 WL 11181980, at *4 (N.D. Ill. Mar. 30, 2018) ("A plaintiff also may not circumvent the *Rooker-Feldman* bar just by alleging fraud in connection with the underlying state action.") (citing *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[F]raud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit.") (citation omitted)). The key question is not how the plaintiff describes his claims, but what the source of plaintiff's alleged injuries actually is: if the plaintiff's claimed damages resulted from a state court's judgment of foreclosure, or if an award of damages would require the court to review or call into question the

11

state court judgment, the action is barred. *See generally Nora v. Residential Funding Co., LLC*, 543 F. App'x 601, 602 (7th Cir. 2013) ("[A] request for review of a state-court foreclosure decision that includes a claim for damages based on charges of defrauding the state court does not elude *Rooker–Feldman*.").

At bottom, Palladino's myriad allegations of fraud on the state court, conspiracy, and multiple purported statutory violations all amount to a claim that Defendants secured a wrongful foreclosure judgment, a judgment that this Court cannot review. The fact that Palladino seeks damages for these alleged acts does not shield his claims from *Rooker-Feldman*, because Palladino only suffered the alleged injuries resulting in damages based on the fact that Defendants were ultimately successful in securing a judgment in state court. Indeed, Palladino expressly describes his damages in terms of the foreclosure proceedings, indicating that he is seeking restitution for the money he expended to re-purchase his home, associated taxes, his attorneys' fees in state court, and for the total foreclosure judgment amount. (*See, e.g.*, Dkt 198-1 at 37.) In order to evaluate Palladino's entitlement to these claimed damages, the Court would necessarily be required to evaluate the state court judgment. *See, e.g.*, *Kelley v. Med–1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008) (holding that plaintiff's claims that defendants improperly obtained attorneys' fees through fraud was barred by *Rooker-Feldman*, because in order to "capitalize on the alleged fraud," the defendants "needed to prevail in state court," which would "ultimately require [the federal court] to evaluate the state court judgments"). Palladino's claims presented in his SAC are therefore plainly barred by *Rooker-Feldman*.[4]

---

[4] Palladino's arguments in his reply brief do not persuade the Court to reach a different result. Most of Palladino's 60-page brief simply repeats or restates his many allegations of fraudulent concealment, falsifying documents, and conspiracy as stated in the SAC. (Dkt. 213.) With respect to the *Rooker-Feldman* doctrine in particular, Palladino acknowledges the rule, but simply suggests in passing that it should not apply in this case because the state foreclosure

Finally, there is no indication that Palladino lacked a reasonable opportunity to pursue his claims in state court such that *Rooker-Feldman* does not apply. Palladino vigorously disputed the foreclosure in state court, including specifically the issue of standing, and was even successful on his first appeal on that issue. While Palladino repeatedly claims that Defendants conspired to mislead and lie to the state court, he does not claim he did not have an opportunity to raise his claims of fraud in those proceedings, or that he could not pursue an appeal on that issue. In fact, Palladino admits that he claimed fraud as an affirmative defense to the foreclosure in the state court. (Dkt. 198-1 ¶ 86.) And of course, Palladino did initially appeal the foreclosure, but ultimately abandoned his appeal. Thus, the Court cannot conclude that Palladino lacked an opportunity to pursue his claims of fraud or misrepresentation in the state court system.

In sum, the Court finds that all of Palladino's claims in his proposed SAC amount to an indirect attack on the state court foreclosure judgment, and his alleged injuries and claimed damages are inextricably intertwined with that judgment. Based on this finding, Palladino's SAC would be futile, because it is barred by *Rooker-Feldman*. *See, e.g.*, *Sheikhani v. Wells Fargo Bank*, 577 F. App'x 610, 611 (7th Cir. 2014) (affirming district court's denial of leave to amend as futile where the plaintiff's claims based on a state court foreclosure action were barred by *Rooker-Feldman*).

---

judgment was not properly and legally obtained, but rather was the result of fraudulent and improper proceedings. (*See id.* at 20–23.) As noted above, however, even if Palladino is correct that the state court judgment was the result of fraud, the *Rooker-Feldman* doctrine nonetheless bars this Court from reviewing that judgment or adjudicating claims that would call the judgment into question. *See Hermann*, 761 F. App'x at 650. Palladino's proper means for challenging any fraud in the state court proceeding was to appeal the judgment.

### B. The Court lacks personal jurisdiction over Real Industry.

The Court could stop its discussion here, as it finds that *Rooker-Feldman* bars all of Palladino's claims. But there are other deficiencies with the SAC that make it futile that are worth briefly addressing. First, the Court lacks personal jurisdiction over Defendant Real Industry. Personal jurisdiction may be either general or specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021). General jurisdiction refers to the forum in which a party, either a person or corporation, is "essentially at home." *Id.* Specific jurisdiction covers those cases where a party is not "at home" in the forum state, but has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 621 (7th Cir. 2022) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemp. Comp. & Placement*, 326 U.S. 310, 316 (1945)). Based on the allegations in the SAC and the additional materials submitted by Defendants, the Court finds that Real Industry is not subject to the Court's general or specific personal jurisdiction.

Real Industry is a Delaware corporation with its principal place of business in Dallas, Texas, and its only alleged connection to this suit is its purported relationship with the company that originated the loan to Ms. Palladino, FIL. (*See* Dkt. 212 at 11; Dkt. 185-1.) In the SAC, Palladino alleges that after FIL's parent company declared bankruptcy, FIL's assets and obligations were transferred to a company called Signature Group Holdings, LLC, which subsequently changed its name to Real Industry. (Dkt. 198-1 ¶ 7.) Palladino thus claims that Real Industry is liable for the prior bad actions, including fraud, of FIL, the company that first originated the loan at issue in the foreclosure action.

As Defendants point out in their joint response, however, Palladino's claims against Real Industry appear to rest on a mistaken belief as to which corporate entity actually assumed FIL's

14

obligations. According to a declaration submitted by Real Industry's CEO in support of its prior motion to dismiss, FIL went through a series of name changes and mergers, ultimately becoming a company called SGGH, LLC. (Dkt. 185-1 ¶¶ 6–7.)[5] Before becoming SGGH, however, FIL was temporarily known as Signature Group Holdings, Inc., a Nevada corporation. (*Id.*) Real Industry is the parent company of SGGH, LLC, and Real Industry itself was previously known as Signature Group Holdings, Inc., though that Signature Group Holdings was a Delaware corporation and was a separate and distinct entity from the Nevada-based Signature Group Holdings. (*Id.* ¶¶ 5, 13.) In other words, FIL and Real Industry appear to have shared the same corporate name at different points, "Signature Group Holdings," which could be the source of Palladino's belief that FIL's obligations were transferred to Real Industry. But according to the sworn declaration from Real Industry's CEO, which Palladino has not disputed, the companies are separate and distinct entities, and FIL did not become Real Industry, but rather became SGGH, LLC, which is a subsidiary of Real Industry.

This distinction in corporate identities is important, because SGGH and Real Industry, even if they are in a subsidiary-parent relationship, have separate identities for the purposes of assessing personal jurisdiction. *See Vortex, Inc. v. P'ships & Uninc. Ass'ns Identified on Schedule A*, No. 22 CV 4189, 2023 WL 7386059, at *2 (N.D. Ill. Nov. 8, 2023) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000)). Even if SGGH can be traced back to FIL and has ties to Illinois, this connection is not imputed to its parent Real Industry. *See id.*[6] And there is nothing in the record suggesting that Real Industry has any

---

[5] In resolving disputes over personal jurisdiction, the Court may consider matters outside the pleadings, including affidavits from defendants. *See, e.g.*, *Purdue Rsch. Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

[6] There is an exception where the affiliated corporations are not truly distinct but are mere alter egos, *see id.*, but

independent ties to Palladino, the underlying loan, or this forum, that would satisfy the requirements of personal jurisdiction apart from its parent company relationship to SGGH. Real Industry is a Delaware corporation that does business out of Texas, and there are no allegations that it continuously does business in Illinois such that it can be subject to this state's personal jurisdiction. *See Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (noting that a corporation can only be subject to the general jurisdiction of the forum state if its "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State"). Nor is there any allegation that Real Industry "purposefully availed" itself of the privilege of conducting business in Illinois by directing *any* activities to the state, and that its activities caused Palladino's injury. *See Centurion Serv. Grp., LLC v. SBMC Healthcare, LLC*, 944 F. Supp. 2d 617, 621 (N.D. Ill. 2013). Again, Real Industry's only connection to the suit is that it is the parent of SGGH, the company that was once FIL. But this relationship is not enough to allow the Court to assert jurisdiction over Real Industry, which itself has no connection to Palladino or the loan or property at issue.

In short, this Court lacks personal jurisdiction over Real Industry, and therefore the claims against it in the SAC are futile.

### C. The SAC contains several deficiencies rendering it futile.

Finally, the Court notes that, apart from the *Rooker-Feldman* doctrine, the SAC is also futile because it purports to bring several claims that are not cognizable causes of action.

---

there is no suggestion in the record nor any argument from Palladino that that is the case here. Instead, Palladino's reply merely doubles down on his apparent belief that Real Industry and SGGH are the same entity, and not simply a parent and subsidiary. Again, however, Palladino bases that belief on the fact that both entities previously shared the same name. But Real Industry has explained that coincidence of names in a sworn affidavit, and Palladino has provided nothing to challenge those assertions.

First, Palladino attempts to assert a claim in Count III under the Illinois Rules of Professional Conduct governing attorneys. Palladino claims that several of the attorney and law firm defendants violated their duty of candor to the state court under Illinois Rule of Professional Conduct 3.3. (Dkt. 198-1 at 38.) But "there is no private right of action for a violation of the Illinois Rules of Professional Conduct." *Alper v. Altheimer & Gray*, No. 97 C 1200, 2002 WL 31133287, at *32 (N.D. Ill. Sept. 26, 2002) (citing *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 157 (Ill. App. Ct. 2000) ("The mere fact that an attorney may have violated professional ethics does not, in and of itself, give rise to an action for damages.")); *see also Bay Grp. Health Care, LLC v. Ginsberg Jacobs, LLC*, No. 15 C 0986, 2017 WL 770984, at *6 (N.D. Ill. Feb. 28, 2017) ("[U]nder Illinois law, a violation of the Rules of Professional Conduct does not give rise to a cause of action or duty in tort. There is no 'ethical malpractice' or 'professional responsibility tort' in Illinois.") (citations omitted). Palladino's claim in Count III of the SAC based on the Rules of Professional Conduct is therefore futile.

Second, Palladino purports to bring a claim for "bankruptcy fraud" in Count VIII of his Complaint, but he cites in particular to several criminal statutes as the basis for his claim. (Dkt. 198-1 at 45) (citing 18 U.S.C. §§ 152, 157, 3571). While bankruptcy fraud is prohibited under federal statute, the statutes create criminal causes of action, not private rights of action. *See, e.g.*, *Kraze Burger, Inc. v. Kraze Int'l, Inc.*, No. 1:19CV0717, 2023 WL 4357251, at *7 n.9 (E.D. Va. May 19, 2023); *see generally Escalante v. Escalante*, No. 22-CV-2485-TC-TJJ, 2023 WL 395971, at *2 (D. Kan. Jan. 25, 2023) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.") (citations omitted). In short, absent any express statutory creation of a private right of action, private litigants such as Palladino may not bring civil claims for damages under federal criminal

17

statutes. Thus, Palladino's claims for bankruptcy fraud in the SAC are futile.

Finally, to the extent that any of Palladino's claims seek damages from Defendants based on their actions in his bankruptcy proceedings, those claims are additionally futile because they improperly seek to upset the final judgment of the bankruptcy court. As noted above, Palladino alleges that several Defendants, including the Ocwen Defendants and the Codilis Parties, submitted false documents to the bankruptcy court overseeing Palladino's Chapter 13 proceedings. (Dkt. 198-1 ¶¶ 57–62.) Palladino claims that, as a result of these false submissions and deceptions, the bankruptcy court dismissed Palladino's petition and prevented him from acquiring protections from the state foreclosure action. (*Id.*) But if Palladino wished to challenge any judgment or ruling by the bankruptcy court, his proper avenue of relief was to file an appeal, which he failed to do. As with his claims indirectly attacking the state court judgment, it would be improper for this Court to entertain an action for civil damages as a collateral attack on any bankruptcy court rulings. Therefore, to the extent any of Palladino's claims would call into question determinations or judgments in the bankruptcy court, those claims are also futile. *See CitiMortgage, Inc. v. Davis*, 20 F.4th 352, 358 (7th Cir. 2021) (affirming district court's dismissal of FDCPA and ICFA claims where the plaintiff's claims hinged on issues that were resolved in his separate bankruptcy proceedings, noting that plaintiff's attempt to challenge the bankruptcy court's holdings in a separate civil suit "constitutes an impermissible collateral attack").[7]

---

[7] As Defendants note in their briefing, Palladino's attempts to claim fraud in the bankruptcy proceedings are likely barred under res judicata or collateral estoppel grounds as well, given that a final judgment was entered in those cases and the same issues and parties are involved in both lawsuits. *See, e.g.*, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (recognizing that res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised in [a prior] action.") (citations omitted).

In sum, Palladino's proposed SAC is additionally futile because many of the claims it purports to bring do not state any legally cognizable claim for relief.

### D. Dismissal of the Entire Case is Warranted

As noted above, the Court previously denied Defendants' motions to dismiss the FAC with leave to reinstate after the Court resolved Palladino's motion for leave to file a SAC. While the Court originally indicated that Defendants could reinstate their prior motion after resolution of the instant motion for leave to amend, the Court has determined that it would be a waste of the parties' and the Court's time and resources to go through additional briefing, because dismissal of the FAC is required on *Rooker-Feldman* grounds alone for the reasons already discussed above.

Palladino's FAC contains the same assertions that Defendants engaged in fraud and deception upon the state court, falsifying documents and committing multiple statutory violations as part of their alleged conspiracy to secure the state court foreclosure judgment despite a lack of standing. (*See* Dkt. 65 ¶¶ 125—129, 134, 150). Palladino packages these allegations in the FAC under some different statutory claims, such as the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Home Ownership Equity Protection Act ("HOEPA"), though he notably includes many of the same causes of action as in his SAC, including claims under TILA, ICFA, and common law claims for conspiracy to committee fraud and for Intentional Infliction of Emotional Distress. (*Id.* ¶ 2.) But as discussed above, a plaintiff cannot avoid the *Rooker-Feldman* doctrine merely by pleading his challenge against the state court judgment under purported independent claims of fraud, violation of due process, or RICO. *See, e.g.*, *Wallis* 443 F. App'x at 204–05. Ultimately then, it does not matter that Palladino's FAC contains different legal claims, because the complaint, just like his proposed SAC, amounts to nothing more than an indirect challenge to the state foreclosure judgment. The FAC must therefore be dismissed under *Rooker-*

*Feldman* grounds alone for all the reasons discussed above with respect to the SAC.

In sum, there is no need for the Court to invite further briefing on the sufficiency of the allegations in the FAC. Rather, the Court concludes that the FAC must be dismissed for a lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine for the same reasons discussed in this opinion with respect to the SAC. The case will therefore be dismissed.

## Conclusion

For the foregoing reasons, Palladino's motion for leave to file a SAC is denied. Further, the Court finds that the FAC must be dismissed for a lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Any further amendments would be futile, and the case will therefore be dismissed in its entirety without prejudice for a lack of subject matter jurisdiction.

ENTERED: 3/21/24

_____

Nancy L. Maldonado

United States District Court Judge